UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

KEREL L. SEABROOKS,                    )
                                       )
                Plaintiff,             )
                                       )
        v.                             )    No. 2:22-cv-00228-JRS-MKK
                                       )
WEXFORD OF INDIANA,                    )
CENTURION OF INDIANA, LLC,             )
KAYLA MCDONALD Nurse,                  )
KEYS Sergeant,                         )
NAVEEN RAJOLI Dr.,                     )
HALL Sergeant,                         )
THOMPSON Correctional Officer,         )
KATHERINE WILLIS Nurse,                )
BOBBIE RIGGS Nurse,                    )
                                       )
                Defendants.            )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Kerel Seabrooks developed colon cancer when previously incarcerated

at Wabash Valley Correctional Facility; he is now housed at Miami Correctional

Facility. He filed this lawsuit under 42 U.S.C. § 1983 alleging he received deliberately

indifferent care and treatment of his colon cancer, and that on several occasions

various Defendants at Wabash Valley improperly ignored or delayed responding to

his requests for urgent medical care, in violation of the Eighth Amendment. After

screening of Mr. Seabrooks's amended complaint, dkt. 88-1, this case proceeded with

Eighth Amendment claims against Wexford of Indiana, Centurion of Indiana, LLC,

Dr. Naveen Rajoli, Nurse Kayla McDonald, Nurse Katherine Willis, Nurse Bobbie

1

Riggs ("Medical Defendants"), Sergeant Keyes, Sergeant Hall, and Correctional Officer Thompson ("State Defendants"). Dkt. 112.

State Defendants and Medical Defendants have separately moved for summary judgment. Dkts. 126 (State Defendants), 131 (Medical Defendants). For the reasons stated below, the State Defendants' motion is **GRANTED** in full and the Medical Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

2

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Defendants filed their respective motions for summary judgment on September 13, 2024. Dkts. 126, 131. The Court did not receive any attempted response from Mr. Seabrooks in opposition to these motions until May 23, 2025. On that date, Mr. Seabrooks filed a "Motion Alerting the Court to an Emergency Circumstance/Request for Guidance on How to Proceed." Dkt. 140. In it, Mr. Seabrooks asserted that he had attempted to mail a response to the summary judgment motions in October 2024, but that it must not have been mailed by Miami Correctional Facility staff. On June 2, 2025, Magistrate Judge Klump issued an order that construed Mr. Seabrooks's filing as a request for an extension of time to file a summary judgment response and denied that request, noting it was filed over six months after the response was due. Dkt. 141. On June 18, 2025, Mr. Seabrooks nevertheless filed a response to the summary judgment motions and several other filings in support of the response. Dkts. 142-145. In part, Mr. Seabrooks requests "relief from judgment" under Fed. R. Civ. P. 60(b)(6) "from the procedural default resulting from the Court not receiving Plaintiff's opposition to the Defendants' motion for summary judgment." Dkt. 142 at 1. To the extent Mr. Seabrooks is requesting that the Court reconsider and overrule Magistrate

Judge Klump's ruling at dkt. 142, the Court declines to do so. Instead, the Court **GRANTS** Medical Defendants' motion to strike Mr. Seabrooks's latest filings for the reasons stated below. Dkt. [146].

Therefore, the Court treats Defendants' summary judgment motions as unopposed. Accordingly, facts alleged in the motions are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up). The Court also notes that under *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996), it should take as true any factual allegations in Mr. Seabrooks's sworn amended complaint that are based on his personal knowledge.

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. Diagnosis and Treatment of Mr. Seabrooks's Colon Cancer

Wexford was the contracted medical provider for Indiana Department of Correction facilities through June 30, 2021, after which date Centurion became the contracted provider.

4

In March 2020, Mr. Seabrooks was seen by Nurse Juanita Chattin after he complained of bloody stools.[1] Dkt. 132-2 at 1 (Medical Records). Nurse Chattin believed Mr. Seabrooks's symptoms were consistent with internal hemorrhoids and provided education to him about hemorrhoids. *Id.* Nurse Chattin's assessment and treatment of Mr. Seabrooks at this visit "was adequate, reasonable, and within the accepted standard of care . . . ." Dkt. 132-1 at ¶ 7 (Affidavit of Dr. Donald C. Kern).

On August 5, 2020, Mr. Seabrooks was seen by Nurse Practitioner Melanie Block-Thralls at a chronic care visit to address his hypertension.[2] Dkt. 132-2 at 4-7. There is no indication that Mr. Seabrooks complained of bloody stools or other gastrointestinal issues at this visit. However, NP Block-Thralls ordered a routine complete blood count ("CBC") for Mr. Seabrooks. *Id.* at 6. This test measures, among other things, a patient's hemoglobin and hematocrit levels. Dkt. 132-1 at ¶ 10. If Mr. Seabrooks had complained of bloody stools, testing his hemoglobin and hematocrit levels would have been indicated. *Id.* Mr. Seabrooks's August 2020 CBC results showed that his hemoglobin and hematocrit levels were within normal ranges; when compared with a CBC conducted a year prior, the August 2020 CBC did not indicate that Mr. Seabrooks had any underlying medical conditions requiring further assessment or treatment. *Id.* at ¶ 11.

Mr. Seabrooks went to the Wabash Valley infirmary on March 18, 2021, complaining of severe stomach pain and vomiting. Dkt. 132-2 at 20. Nurse Dana

---

[1] The Court previously screened out any claims against Nurse Chattin on statute of limitations grounds. *See* dkt. 112 at 4, dkt. 138.

[2] NP Block-Thralls is not a defendant in this action.

Lantrip contacted Dr. Samuel Byrd for advice and additional orders.[3] *Id.* at 21. Dr. Byrd directed that Mr. Seabrooks be given Phenergan, an antihistamine/antiemetic drug used to treat nausea and vomiting. *Id.* This seems to have resolved Mr. Seabrooks's symptoms and was an action that was "adequate, reasonable, and within the acceptable standard of care." Dkt. 132-1 at ¶ 14.

Mr. Seabrooks alleged in his amended complaint that in April 2021, he was sent to Terre Haute Regional Hospital following an episode of severe vomiting, and that a specialist at that time recommended that he undergo a colonoscopy. Dkt. 88-1 at 10. In his deposition, however, Mr. Seabrooks testified that he could not recall whether he actually was sent to the hospital at that time, as opposed to being sent to the infirmary, and that this incident of severe illness may actually have occurred in March 2021. Dkt. 127-1 at 76-77. In neither the amended complaint nor Mr. Seabrooks's deposition did he mention any other bouts of severe stomach ailments in the spring of 2021.

On July 7, 2021, a new CBC for Mr. Seabrooks, taken as part of routine annual testing, revealed that he had "severe microcytic anemia" indicating "chronic blood loss." Dkts. 132-1 at ¶ 15; dkt. 132-2 at 23-24. On July 14, 2021, Dr. Rajoli ordered additional diagnostic testing and started Mr. Seabrooks on Prilosec. Dkt. 132-2 at 24. The additional tests included CBC with differential; comprehensive metabolic panel; testing of folic acid, iron, vitamin B12, and certain enzyme levels; a reticulocyte count; total iron binding capacity; and stool occult blood. *Id.* at 25. Dr. Rajoli also began Mr.

---

[3] Neither Nurse Lantrip nor Dr. Byrd are defendants in this action.

Seabrooks on prophylactic proton pump inhibitors ("PPI") and histamine type 2 blockers ("H-2 blockers"), which reduce stomach acid and are used to treat conditions such as acid reflux and ulcers. Dkt. 132-1 at ¶ 18.

On July 20, 2021, the B12 test results indicated that Mr. Seabrooks's level of that vitamin was severely suppressed, which may have been contributing to his anemia. *Id.* at ¶ 17. Mr. Seabrooks's other test results were still pending at that time. *Id.* Dr. Rajoli ordered vitamin B12 supplementation for Mr. Seabrooks and directed that he receive monthly CBC testing while continuing to look for other possible causes of his anemia. *Id.*

On August 4, 2021, Dr. Rajoli conducted Mr. Seabrooks's chronic care visit and also noted that additional test results indicated the possibility he had a gastrointestinal bleed. *Id.* at ¶ 19. Dr. Rajoli immediately submitted a request for Mr. Seabrooks to be seen by an outside gastrointestinal ("GI") specialist. Dkt. 132-2 at 30. Also on this date, Dr. Rajoli submitted a medical diet order for Mr. Seabrooks to be served only bland food. *Id.* at 40. The original order ran to September 4; however, on August 23, 2021, Dr. Rajoli extended the diet order through November 23, 2021. Dkt. 132-3 at 18 (Attachment to Affidavit of Dr. Rajoli). In his amended complaint, Mr. Seabrooks asserts that he stopped receiving his special diet sometime in September, and that he was told by an unidentified nurse that Dr. Rajoli had discontinued the diet. Dkt. 88-1 at 11.

Mr. Seabrooks's GI consultation took place at Terre Haute Regional Hospital on August 10, 2021. Dkt. 132-2 at 44. The specialist recommended that Mr. Seabrooks

undergo a colonoscopy and endoscopy. *Id.* at 45. On August 11, 2021, Dr. Rajoli reviewed the specialist's recommendations and immediately submitted a request to Centurion for Mr. Seabrooks to undergo both procedures, which Centurion approved on August 13, 2021. *Id.* at 54-55. Also on August 13, Mr. Seabrooks reported to Dr. Rajoli that his symptoms had improved since starting the bland diet and taking the PPIs. *Id.* at 57. Despite Mr. Seabrooks's improvement, Dr. Rajoli did not change his treatment plan or recommendations. Dkt. 132-1 at ¶ 23.

On September 14, 2021, Dr. Rajoli noted that new testing revealed that Mr. Seabrooks had a "continuous slow drop in his hemoglobin and the CBC profile indicates GI sources of bleeding." Dkt. 132-2 at 60. Dr. Rajoli noted that Mr. Seabrooks's outside GI testing was still pending and directed additional CBC testing and requested that nursing staff evaluate whether he needed a blood transfusion. *Id.*

On September 17, 2021, Mr. Seabrooks was taken to the infirmary after complaining of severe abdominal pain. Dkt. 132-1 at ¶ 25. A nurse contacted Dr. Byrd, who ordered that Mr. Seabrooks be given tramadol, Phenergan, and IV fluids, then transported by ambulance to the hospital. Dkt. 132-2 at 64. At the hospital, a CT scan of Mr. Seabrooks's abdomen was obtained. *Id.* at 66. The scan failed to reveal any tumor in Mr. Seabrooks's lower gastrointestinal tract or stomach. Dkt. 132-1 at ¶ 26. Testing of Mr. Seabrooks's feces also was negative for blood. *Id.* The hospital physician prescribed Carafate, an ulcer medication, which Dr. Byrd continued Mr. Seabrooks on when he returned to Wabash Valley that same day. *Id.* at ¶ 27. Dr. Byrd obtained Centurion approval to prescribe Carafate, a non-formulary drug. *Id.*

Dr. Rajoli had a follow-up visit with Mr. Seabrooks on September 23, 2021. Dkt. 132-2 at 73. Dr. Rajoli noted that Mr. Seabrooks's stool had been testing negative for blood since the July 2021 testing was performed. *Id.* Mr. Seabrooks reported at this visit that the Carafate seemed to be helping his abdominal pain. *Id.* Dr. Rajoli noted that Mr. Seabrooks's outside testing was still pending while "awaiting Contracting hospital availability of GI specialists" and asked a Wabash Valley administrative assistant to follow up on the status of that testing. *Id.* The next day, an administrative assistant reported that Mr. Seabrooks's colonoscopy was scheduled for November 10, 2021. *Id.* at 76. The only other time Mr. Seabrooks saw Dr. Rajoli before his colonoscopy was on October 8, 2021, at which time Mr. Seabrooks reported that his abdominal symptoms were improved and Dr. Rajoli advised him to continue with his prescribed medications. *Id.* at 86.

Mr. Seabrooks's colonoscopy was performed offsite as scheduled on November 10, which revealed that he had a "malignant mass of cecum," i.e., suspected colon cancer. *Id.* at 90. The GI specialist who performed the colonoscopy recommended that Mr. Seabrooks be referred to a surgeon. *Id.* Dr. Byrd visited with Mr. Seabrooks upon his return to Wabash Valley that day and confirmed that he had no concerns about proceeding with surgery and having the tumor removed. *Id.* Dr. Byrd submitted a surgery consult request for Mr. Seabrooks to Centurion that day, and Centurion approved it on November 14, 2021. *Id.* at 97.

On November 16, 2021, Dr. Rajoli admitted Mr. Seabrooks to the Wabash Valley infirmary full-time after he reported his inability to care for himself in general

population. *Id.* at 100. Except for offsite medical treatment, Mr. Seabrooks would remain in the infirmary for pre- and post-surgical care until February 21, 2022. *Id.* at 165.

Mr. Seabrooks's surgery consultation took place on December 9, 2021; the surgeon recommended that Mr. Seabrooks undergo a right hemicolectomy to remove the tumor. *Id.* at 115. Dr. Byrd submitted a request to Centurion to approve the surgery, and they did so on December 20, 2021. *Id.* at 119. The surgery took place on January 10, 2022. *Id.* at 136. An oncologist's post-surgical evaluation of Mr. Seabrooks and his tumor indicated that his cancer had been in stage II, and that no follow-up chemotherapy was needed. *Id.* at 157. Mr. Seabrooks had a follow-up visit with the oncologist in November 2022, at which time he was found to be symptom-free in relation to his colon cancer. Dkt. 132-1 at ¶ 51.

The Medical Defendants retained an expert, Dr. Donald Kern, to review Mr. Seabrooks's medical records. Dkt. 132-1. Dr. Kern is board certified in internal medicine, and in public health and general preventive medicine. *Id.* at ¶ 1. He has particular expertise in medical care within prisons and jails and currently is corporate medical director for Quality Correctional Care, Inc. *Id.* at ¶ 3. Dr. Kern believes overall that "to a reasonable degree of medical certainty, Mr. Seabrooks consistently received adequate, reasonable, and appropriate medical treatment from Wabash Valley . . . medical staff and providers . . . ." *Id.* at ¶ 53. Specifically with regard to Dr. Rajoli, Dr. Kern believes that his "prompt action and persistence in ensuring his patient received both an [endoscopy] and colonoscopy . . . resulted in

early diagnosis of the patient's colon cancer and resolution of the condition with surgical intervention and no requirement for chemotherapy." *Id.* at ¶ 55. Dr. Kern also could not identify any corporate policy, custom, or practice that injured Mr. Seabrooks. *Id.* at ¶ 57. Dr. Kern also stated that "Mr. Seabrooks's reports of upper abdominal pain did not necessarily indicate an issue in the lower GI tract . . . ." *Id.* at ¶ 55.

### B. Specific Alleged Instances of Delayed or Ignored Responses to Requests for Medical Assistance

#### 1. March 12, 2021 Nurse Appointment – Nurse McDonald

On this date, Mr. Seabrooks was scheduled to see Nurse McDonald after he submitted a healthcare request complaining of abdominal pain and abnormal bowel movements. Dkt. 132-5 at 1, ¶ 3 (Affidavit of Nurse McDonald). However, Mr. Seabrooks did not appear for this appointment. *Id.* A correctional officer informed Nurse McDonald that Mr. Seabrooks had chosen to go to commissary instead. *Id.* Nurse McDonald filled out a refusal of medical treatment form indicating that, based on information provided by the officer, Mr. Seabrooks had gone to the commissary instead. *Id.* at 1, ¶ 4; *Id.* at 7-8. Although Mr. Seabrooks contends that Nurse McDonald falsified the refusal of treatment form and that he did not in fact go to the commissary on that date, he admitted during his deposition that he had no knowledge to dispute Nurse McDonald's statement that a correctional officer informed her that he had gone to the commissary. Dkt. 127-1 at 34-35.

## 2. Spring 2021 Infirmary Visit – Sgt. Keyes

As discussed above, Mr. Seabrooks was sent to the Wabash Valley infirmary, apparently on March 18, 2021, after complaining of severe stomach pain. In his amended complaint, Mr. Seabrooks alleged this occurred in April 2021, but the Wabash Valley records indicate that it occurred in March 2021, and Mr. Seabrooks agreed during his deposition that the incident could have occurred then. And again, there was no claim by Mr. Seabrooks or evidence that there was a second occasion in the spring of 2021 when he was sent to the Wabash Valley infirmary.

In any case, construing the evidence in a light most favorable to Mr. Seabrooks, he testified during his deposition that before this trip to the infirmary, at about 2 p.m., he pressed the intercom button seeking immediate medical assistance because he was feeling dizzy and vomiting blood, among other symptoms. Dkt. 127-1 at 86. Mr. Seabrooks did not receive a response to this first request, so he pressed the button again. *Id.* This time, Mr. Seabrooks says he was told by an unidentified guard that, per Sergeant Keyes, Mr. Seabrooks would receive a misconduct report if he pressed the button again. *Id.* at 91. When there was a shift change at 6 p.m., he pressed the button again and was told by a guard that they had been warned by the first shift that he should not continue pressing the button. At about 6:15 p.m., Mr. Seabrooks collapsed in the dayroom and was taken to the infirmary in a wheelchair, where he was treated for his severe stomach pain and vomiting with Phenergan. Dkt. 127-1 at 5; 132-5 at 4. Mr. Seabrooks asserts that the next day, another officer told Mr. Seabrooks that when Sgt. Keyes was asked why it had taken so long to get medical

attention for Mr. Seabrooks, Sgt. Keyes had responded, "I don't give a fuck if he dies or not." Dkt. 127-1 at 75.

### 3. September 28-29, 2021 Infirmary Visit and Aftermath – Nurse Willis, Sgt. Hall, and Officer Thompson

On this date, Mr. Seabrooks was taken to the infirmary for abdominal pain and vomiting. Mr. Seabrooks alleges in his amended complaint that for approximately three hours, Nurse Willis ignored him while he was lying on the floor, screaming in pain. Dkt. 88-1 at 14. However, the medical records from this incident indicate that he was treated by Nurse Theresa Auler and do not mention Nurse Willis. Dkt. 132-2 at 77-80.

After Mr. Seabrooks was released from the infirmary and taken back to his cell, he again began experiencing severe symptoms. In his amended complaint, Mr. Seabrooks states that he informed Defendant Officer Thompson (now named Tarrh) that he was again seriously ill, but that she was "hostile and refused to call a medical emergency signal." Dkt. 88-1 at 12. In his deposition, Mr. Seabrooks could not recall exactly what Officer Thompson (Tarrh) allegedly said. Dkt. 127-1 at 129. Officer Thompson (Tarrh) states in an affidavit that she was assigned to the north side of Wabash Valley on this date and Mr. Seabrooks was housed in the south side, and therefore she had no contact with Mr. Seabrooks on that date. Dkt. 127-6. Furthermore, a Wabash Valley shift roster from that date indicates that Officer Thompson (Tarrh) was assigned to the north side. Dkt. 127-7.

In his amended complaint, Mr. Seabrooks further asserts that after failing to get help from Officer Thompson (Tarrh), he asked to speak to a shift sergeant, which

13

was Sgt. Hall (now named McClelland). Dkt. 88-1 at 12. Sgt. Hall (McClelland) also refused to call a medical emergency signal. *Id.* In his deposition, Mr. Seabrooks said that Sgt. Hall (McClelland) was not hostile, but also that she was not helpful. Dkt. 127-1 at 111. She did not expressly refuse to seek medical care for Mr. Seabrooks, but she walked away from his cell without indicating that she would do so. *Id.* Sgt. Hall (McClelland) has submitted an affidavit swearing that she did in fact promptly attempt to contact medical on Mr. Seabrooks's behalf on that occasion. Dkt. 127-4 at ¶ 6. Mr. Seabrooks was unable to directly refute this assertion during his deposition, stating that he assumed Sgt. Hall (McClelland) had not attempted to contact medical because no one came to check on his cell for several hours. Dkt. 127-1 at 112.

After that period of time, a medical emergency was in fact called for Mr. Seabrooks when he lost consciousness. Dkt. 127-4 at 3. He was revived and taken to the infirmary for further observation. *Id.* Mr. Seabrooks recalled that when he began regaining consciousness, he heard someone say that he had had no pulse. Dkt 127-1 at 102 (testifying that he heard Sgt. Keyes say this); *id.* at 118 (testifying that he heard Sgt. Hall (McClelland) say it).

### 4. November 10, 2021 Infirmary Visit – Nurse Riggs

After returning from his offsite colonoscopy on this date, Mr. Seabrooks was taken to the infirmary complaining of uncontrollable vomiting, profuse sweating, and lethargy. Dkt. 88-1 at 14. Nurse Riggs was on duty at that time. Mr. Seabrooks asserts in his amended complaint that Nurse Riggs refused to provide any pain medication to him and allowed him to sleep on the bathroom floor most of the night

instead of in a bed. *Id.* at 14-15. Then, she ordered him to leave the infirmary and return to his cell even though he clearly was not well enough to do so. *Id.* at 15. Medical records and an affidavit from Nurse Riggs are inconsistent with Mr. Seabrooks's sworn allegations. Dkt. 132-4 at 2 ¶ 10, and 5-6.

### 5. December 3, 2021 Infirmary Incident – Nurse Riggs

On this date, after Mr. Seabrooks had been admitted full-time to the infirmary, he requested that Nurse Riggs give him his prescribed Tylenol-3 painkiller during the morning hours. Dkt. 88-1 at 15. However, she did not do so, telling Mr. Seabrooks to "knock it off" when he repeated the request. *Id.* Nurse Riggs provided medications to other inmates in the infirmary but not to Mr. Seabrooks. *Id.* She finally gave Mr. Seabrooks his Tylenol-3 at about 4 p.m., after he had been in pain for several hours. *Id.* Again, Nurse Riggs's affidavit is inconsistent with Mr. Seabrooks's sworn allegations and she denies knowingly denying him pain medication. Dkt. 132-4 at ¶¶ 12-13. Nurse Riggs was not discussed at all during Mr. Seabrooks's deposition.

### III.
### Discussion

### A. Objection to Magistrate Judge Klump's Order

Federal Rule of Civil Procedure 72 allows parties to object to a magistrate judge's ruling. *See also* 28 U.S.C. 636(b). When the objection is to a ruling on "a pretrial matter not dispositive of a party's claim or defense," the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Although Mr. Seabrooks's motion at dkt. 142 does not expressly mention Rule 72, the Court liberally construes it as a timely request for

15

modification or setting aside of Judge Klump's order at dkt. 141, denying him permission to file a belated summary judgment response. Also, Medical Defendants have filed a motion to strike these latest filings. Dkt. 146.

Mr. Seabrooks's original motion, dkt. 140, included attachments indicating that he had trouble viewing a video recording provided to him by State Defendants because of alleged interference by Miami Correctional Facility law library staff and that he grieved that issue. As the Medical Defendants point out, although Mr. Seabrooks alleges that he provided a copy of his summary judgment response to his caseworker to be mailed on October 7, 2024, the grievance is dated October 16, 2024. It is unclear how or why Mr. Seabrooks would have still been wanting to view the video if he had already submitted his summary judgment response.

Mr. Seabrooks also refers to another pending case in this District, *Seabrooks v. Vanihel*, No. 2:24-cv-00043-MPB-MKK, where Judge Klump sua sponte granted him permission to file a belated summary judgment response after Mr. Seabrooks filed a motion requesting a status update about the motion, and Mr. Seabrooks stated he had mailed in a response, but the Court had not received it. *Id.* at dkts. 45, 47.

Be that as it may, the Court notes that in the *Vanihel* case, Mr. Seabrooks filed his status update motion a mere two weeks after his response had been due, which was after the Court had granted his timely motion for an extension of time to file his response. Here, Mr. Seabrooks did nothing in relation to these summary judgment motions for nearly eight months after they were filed. If anything, the *Vanihel* case demonstrates Mr. Seabrooks's ability to track the progress of his cases and take

16

timely action if he believes something is amiss. Mr. Seabrooks also has not provided any evidence, aside from his self-serving statement, that he did in fact attempt to mail a timely summary judgment response on October 7, 2024. And, although these summary judgment motions have been under advisement for many months, that does not mean the Court has not been working on them. These motions must be resolved now, especially considering the already-set trial date in this matter. Allowing Mr. Seabrooks to file such a belated response would interfere with the prompt and timely administration of justice.

Therefore, the Court cannot say that Magistrate Judge Klump clearly erred in her ruling at dkt. 141. The Court **GRANTS** the Medical Defendants' motion to strike. Dkt. [146]. The **clerk is directed to strike** dkts. [142], [143], [144], and [145] from the docket. As noted, the Court has not considered Mr. Seabrooks's latest filings in ruling on the summary judgment motions.

### B. General Eighth Amendment Deliberate Indifference Standard

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state

official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

### C. Colon Cancer Diagnosis and Treatment

It is undisputable that Mr. Seabrooks's development of colon cancer was objectively serious. To avoid summary judgment, then, regarding the diagnosis and treatment of that issue, the record must allow a reasonable jury to conclude that the Medical Defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Seabrook]'s health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Seabrooks "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted).

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836

F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

For claims such as Mr. Seabrooks's, "[i]t is not enough that the plaintiff simply believes the treatment was ineffective or disagrees with the doctor's chosen course of treatment. The challenged plan must deviate so substantially from accepted professional judgment that no reasonable physician would reach the same judgment." *Thomas v. Martija*, 991 F.3d 763, 772 (7th Cir. 2021) (cleaned up). Generally, to avoid summary judgment on a deliberate indifference claim where the movant has designated uncontradicted expert evidence indicating that a course of treatment was medically acceptable, a plaintiff must "offer expert testimony or other comparable evidence on that contention." *Jacob v. Field*, No. 24-1426, 2025 WL 64011 at *2 (7th Cir. Jan. 10, 2025) (citing *White v. Woods*, 48 F.4th 853, 862 n.4 (7th Cir. 2022)). "Although such evidence 'is not always essential for an Eighth Amendment deliberate indifference claim based on medical treatment (or lack thereof), most such claims require us to take a peek at the physician's judgment, to ensure that he was actually exercising medical judgment and was not otherwise deliberately indifferent.'" *White*,

48 F.4th at 863 n.4 (quoting *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 520 (7th Cir. 2019)).

On occasion, a plaintiff may survive summary judgment on claims such as Mr. Seabrooks's, despite a lack of contrary expert evidence, but such cases are relatively rare. "Such evidence can include standard treatment protocols, which can support an inference that the doctor '"knew better' than to pursue the course of treatment that he did." *Wilson*, 932 F.3d at 520 (quoting *Whiting*, 839 F.3d at 663). In *Wilson*, the plaintiff presented evidence that his physician ignored the possibility that the plaintiff had a hernia and the physician's refusal to provide appropriate treatment for a hernia "would have contradicted his own medical judgment about appropriate basic treatment for hernias." *Id.*

Here, there is no evidence in the record that would support a finding that Dr. Rajoli ignored or contradicted what the treatment plan would have been for Mr. Seabrooks. Dr. Kern, after reviewing Mr. Seabrooks's medical records, unequivocally states that the Wabash Valley medical team, and Dr. Rajoli in particular as the sole named physician defendant, provided an appropriate level of care for Mr. Seabrooks. There is a complete lack of evidence that Dr. Rajoli should have done something different, or sooner, or additionally that would have benefitted Mr. Seabrooks. Fortunately, his colon cancer was detected relatively early, he has not needed follow-up chemotherapy, and he has not had a recurrence of the disease. Also, as Dr. Kern discussed, not all of Mr. Seabrooks's GI problems prior to the discovery of his colon

cancer would have been signs of colon cancer, as opposed to separate upper GI problems that were addressed through medication.

This is also not a situation in which it would be readily apparent to a layperson that earlier referral to an outside specialist, or a different course of treatment, would have been mandated. Although Mr. Seabrooks's pro se status and lack of legal skills in conducting discovery may have resulted in him being unable to designate competing expert testimony in this case, it does not alleviate his burden on summary judgment. *See Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011).

Mr. Seabrooks also asserts that although Dr. Rajoli initially put him on a special diet in August 2021, Dr. Rajoli caused the diet to be terminated in September, which caused Mr. Seabrooks significant pain thereafter. But the only basis for Mr. Seabrooks's contention that Dr. Rajoli terminated the diet is a statement allegedly made by an unidentified nurse. The documentary evidence, and Dr. Rajoli's sworn assertions, indicate that he never caused the diet to be terminated, as opposed to automatically extending the order for it to the end of November 2021. Disregarding the fact that Mr. Seabrooks did not have to eat anything that was not bland or that otherwise caused him pain, even if he had to resort to commissary, Mr. Seabrooks has not supplied any admissible evidence about who was responsible for the alleged termination of his diet. His recounting of what an unidentified non-party nurse said to him is inadmissible hearsay that the Court cannot consider at summary judgment. *See* S.D. Ind. Local Rule 56-1(f) (facts as claimed and supported by admissible evidence by the movant are admitted as true unless the non-movant specifically

controverts the facts with admissible evidence); *see also Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006) (district court properly disregarded unsworn statements at summary judgment).

In sum, Dr. Rajoli is entitled to summary judgment. *See, e.g.*, *Jacob*, 2025 WL 64011 at *2 (affirming summary judgment in favor of physician where pro se plaintiff failed to present any expert testimony indicating that physician's alleged three-year delay in adequately treating plaintiff's hypertension "departed at all, let alone substantially, from acceptable medical judgment."); *Riley v. Waterman*, 126 F.4th 1287, 1296 (7th Cir. 2025) (holding medical defendants were entitled to summary judgment, despite evidence they may not have followed specialist's treatment recommendations for plaintiff's plantar fasciitis, emphasizing that "an overarching consideration in assessing a deliberate indifference claim is an examination of the totality of circumstances of the patient's care."). And, in the absence of any underlying constitutional violation regarding the detection and treatment of Mr. Seabrooks's colon cancer, Wexford and Centurion cannot be held liable for damages under *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978). *See Pyles*, 771 F.3d at 412 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)) (stating "Wexford cannot be held liable for damages because there is no underlying constitutional violation.").[4]

---

[4] Also, to the extent Mr. Seabrooks suggests that his initial colonoscopy was unreasonably delayed due to policies or practices of either Wexford or Centurion or both, the Court first notes that Mr. Seabrooks's allegation in his amended complaint that such a procedure was first recommended by an outside specialist in April 2021 was contradicted by his deposition testimony, where he admitted he could not recall that he actually was taken to an outside

**D. Discrete Incidents of Failure to Immediately Address Emergency Medical Issues**

Mr. Seabrooks's claims regarding discrete occasions on which various Defendants allegedly ignored his need for immediate medical attention present a different factual and legal issue than his claims regarding the overall diagnosis and treatment of his colon cancer.

### 1. Nurse McDonald

Mr. Seabrooks's lawsuit against Nurse McDonald is based on a single occasion when he missed a scheduled appointment with her, which she then indicated on a refusal of treatment form that he had gone to the commissary instead and did not reschedule the appointment. As indicated in the medical records, and as Nurse McDonald has sworn in an affidavit, she was told by an officer that Mr. Seabrooks had gone to the commissary. Although Mr. Seabrooks disputes whether he went to the commissary, he has not submitted any evidence based on personal knowledge to contradict Nurse McDonald's statements that she was informed by a correctional officer that he had gone to the commissary.

To be considered by a Court when ruling on a summary judgment motion, evidence in opposition to the motion must be based on personal knowledge, not

---

hospital or seen by an outside specialist in the spring of 2021. Second, to the extent it took several months for the colonoscopy to take place after it clearly was recommended in August 2021, the undisputed record indicates that this delay was because of a lack of availability of GI specialists at Terre Haute Regional Hospital to conduct the procedure. In other words, this delay was not attributable to Centurion or Dr. Rajoli, but to a shortage of qualified physicians generally, an issue that prisoners and non-prisoners alike face when seeking medical care.

speculation or conjecture. *See Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 878-79 (7th Cir. 2025). Here, Mr. Seabrooks can only speculate that Nurse McDonald is lying about being told by an officer that he went to the commissary instead of his appointment, which is insufficient to defeat summary judgment.[5]

And, liability under § 1983 is predicated upon a defendant's personal involvement in a constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* Here, even if the Court were to assume that the officer who told Nurse McDonald that Mr. Seabrooks went to the commissary infringed upon his constitutional rights, there is no admissible evidence that Nurse McDonald was responsible for that infringement, or that she had any duty to personally investigate whether the information relayed to her was accurate. Nurse McDonald is entitled to summary judgment.

### 2. Sgt. Keyes

In his sworn amended complaint and during his deposition, Mr. Seabrooks asserts that when he pressed the emergency button in his cell, apparently in March 2021, seeking immediate medical assistance, he was informed by an unidentified officer who answered the intercom that Sgt. Keyes told him to stop pressing the

---

[5] The Court also notes that Nurse McDonald's recollection of what the correctional officer told her would not be hearsay under Fed. Evidence Rule 801(c)(2), because it would not be admitted for the truth of the matter, i.e. whether Mr. Seabrooks actually went to the commissary.

button or he would be faced with a misconduct report. Mr. Seabrooks also asserts that an identified officer later told him that Sgt. Keyes had said, "I don't give a fuck if he dies or not," when confronted about the alleged delay in obtaining medical care for Mr. Seabrooks on that date.

Mr. Seabrooks's recounting of non-sworn statements from non-defendants about communications they allegedly had with Sgt. Keyes are inadmissible hearsay that the Court cannot consider at summary judgment. *See* S.D. Ind. Local Rule 56-1(f); *see also Collins*, 462 F.3d at 760 n.1 (7th Cir. 2006). There is no other evidence in the record that would implicate Sgt. Keyes in any delay in obtaining medical care for Seabrooks, an allegation that Sgt. Keyes flatly refuted in an affidavit. Sgt. Keyes is entitled to summary judgment.

### 3. Nurse Willis

Mr. Seabrooks alleges in his sworn amended complaint that Nurse Willis ignored his serious need for pain treatment on a single occasion in the infirmary, on September 28, 2021. However, the medical records from this incident indicate that he was treated by Nurse Theresa Auler and do not mention Nurse Willis being present at any time. Dkt. 132-2 at 77-80. Mr. Seabrooks was not questioned about Nurse Willis during his deposition.

A plaintiff's relying on personal recollection may be sufficient to survive summary judgment, but not if that recollection "'is flatly refuted'" by other evidence in the record, such as documentary evidence. *See Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 819 (7th Cir. 2016) (quoting *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690

(7th Cir. 2010)). Thus, although the Court has considered Mr. Seabrooks's sworn amended complaint to be equivalent to an affidavit for summary judgment purposes, when it comes to Nurse Willis his personal recollection is flatly rejected by objective documentary evidence clearly indicating that Nurse Auler, not Nurse Willis, treated him in the infirmary on September 28, 2021. Nurse Willis is entitled to summary judgment.

### 4. Officer Thompson (Tarrh)

Mr. Seabrooks alleges in his sworn amended complaint, and repeated in his deposition, that Officer Thompson (Tarrh) ignored his requests for medical assistance on September 28-29, 2021, after returning to his cell from the infirmary. Officer Thompson (Tarrh) has sworn in an affidavit that she was not even working on Mr. Seabrooks's side of Wabash Valley at the time and date at issue and had no interaction with him, and that affidavit is supported by objective documentary evidence clearly demonstrating that she was in fact not working on Mr. Seabrooks's side of the prison. As with Nurse Willis, this is an instance where Mr. Seabrooks's recollection is flatly contradicted by other clear, undisputed evidence in the record. Officer Thompson (Tarrh) is entitled to summary judgment.

### 5. Sgt. Hall (McClelland)

Mr. Seabrooks alleges in his sworn amended complaint, and clarified and repeated in his deposition, that Sgt. Hall (McClelland) did not timely attempt to obtain medical assistance for him on September 28-29, 2021, after he had requested to speak with a sergeant. However, Mr. Seabrooks has not stated that Sgt. Hall

(McClelland) flatly refused to seek medical treatment for him; rather, she allegedly simply walked away from his cell.

Sgt. Hall (McClelland) has submitted a sworn affidavit asserting that, in fact, she contacted Wabash Valley medical more than once at that time, after Mr. Seabrooks requested medical assistance, but that she did not think he was experiencing a medical emergency at that time, at least until he later lost consciousness in his cell. Similar to Nurse McDonald, this is another instance in which Mr. Seabrooks can only speculate that Sgt. Hall did not attempt to obtain medical assistance for him until he did pass out. Mr. Seabrooks does not have any personal knowledge of any evidence to contradict Sgt. Hall's (McClelland) sworn statements. Sgt. Hall (McClelland) is entitled to summary judgment.

### 6. Nurse Riggs

Finally, as to Nurse Riggs, Mr. Seabrooks has attested in his amended complaint that on both November 10 and December 3, 2021, she was deliberately indifferent to his extended periods of pain, for several hours each time. And that on November 10 specifically, she made him leave the infirmary and return to his cell even though he was not fit to do so. Nurse Riggs does not argue that Mr. Seabrooks was not experiencing a serious medical need on either occasion, or that even if his version of events was accepted it would not have amounted to deliberate indifference. *See, e.g.*, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 661 (7th Cir. 2021) ("Not treating pain *can* be an Eighth Amendment violation, of course, even if it is a matter of only minutes or hours."). Rather, she asserts that the medical records and

her own sworn statements directly refute Mr. Seabrooks's version of events and that he has no evidence in support of his allegations.

On this point, however, the fact that Mr. Seabrooks's sworn recollection of events conflicts with what was written in the medical records and with what Nurse Riggs now attests to simply creates a genuine issue of material fact as to what precisely happened on those dates. Again, the sworn allegations in Mr. Seabrooks's amended complaint are in fact "evidence" for summary judgment purposes under *Ford*. Unlike with Nurse Willis, there is nothing objective in the record to show that Nurse Riggs was not in fact present with Mr. Seabrooks on these dates. And whatever may be written down in medical records is not the "Gospel truth" when it comes to relating what exactly happened or what was said during any particular interaction between a medical provider and a patient. It would be a jury's responsibility to sort out whether to believe Mr. Seabrooks or Nurse Riggs about what happened on those dates. Nurse Riggs is not entitled to summary judgment.

## IV.
## Conclusion

Medical Defendants' motion to strike is **GRANTED**. Dkt. [146]. The **clerk is directed** to strike dkts. [142], [143], [144], and [145] from the docket.

State Defendants' summary judgment motion, dkt. [126], is **GRANTED** in full. The **clerk is directed to change the names on the docket** of Defendant "Keys" to "Matthew Keyes", Defendant "Hall" to "Hilary McClelland," and Defendant "Thompson" to "Alainey Tarrh", and **to terminate these defendants from the docket**.

Medical Defendants' summary judgment motion, dkt. [131], is **GRANTED** in part as to all claims against Wexford of Indiana, Centurion of Indiana, LLC, Dr. Naveen Rajoli, Nurse Kayla McDonald, and Nurse Katherine Willis. **The clerk is directed to terminate these defendants from the docket**. The motion is **DENIED** in part as to the Eighth Amendment claims against Nurse Bobbie Riggs.

The Court prefers that Mr. Seabrooks be represented by counsel for the remainder of this action. Therefore, the Court now **GRANTS** the pending motion for counsel, dkt. [137]. The Court will attempt to expeditiously recruit counsel for Mr. Seabrooks.

Currently, a trial is set to begin in this matter on September 2, 2025, and a final pretrial conference is set for August 14, 2025. The parties should not expect a continuance of these dates. The Court will separately issue pretrial preparation orders. The Magistrate Judge is requested to hold a telephonic status conference in this matter as soon as possible after counsel is recruited for Mr. Seabrooks.

**IT IS SO ORDERED.**

Date: 7/14/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

KEREL L. SEABROOKS
126812
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

Magistrate Judge Klump's Chambers